*The letters testamentary under* FREDERIC BRONSON'S *Will.*

WHERE a testator nominated and appointed P. K. and J. T. as executors, and authorized the survivor, if one should die, to appoint another executor by his deed, and the survivor appointed E. W., by his deed— Held, that the Surrogate had no power to issue letters testamentary to E. W., as he was not named in the will.

Executorship cannot be delegated under the statutes of this State.

JOHN J. TOWNSEND, *petitioner in person.*

THE will of Frederic Bronson, admitted to probate on the 17th day of November, 1868, gives his executors a power of sale of real estate and establishes a trust in them, It then appoints the executors by the following clause :

" *Thirteenth.* I hereby appoint Philip R. Kearney and John J. Townsend, both of the city of New York, general executors of this my will, and trustees of all that portion of my estate, the trust of which is not conferred upon the said New York Life Insurance and Trust Company, except as herein provided; and in case of the death of either of them before the termination of their duties under this my will, the survivor shall have the power, and it shall be his duty, to appoint another executor and trustee, in the place of the one so dying, by deed under his or their hands and seals, and filed in the Surrogate's office, of the county of New York, and thereupon such nominee shall be and become invested with all the rights, powers and duties of the executor and trustee so dying, in like manner as if he had been named executor and trustee in this my will, and the same power of appointment may be exercised, from time to time, in case of vacancy by death, by the surviving trustee and executor, whether original or substituted. And I further authorize and empower the executors of this my will, to retain for their compensation for the execution of my will, and the trusts therein mentioned, five per cent on the net income of my said estate, that shall be collected and received by them."

On the 26th day of November, 1869, the surviving executor of this will, John J. Townsend, petitioned the Surrogate, setting forth the original grant of letters testamentary to both executors named in the will; that Philip R. Kearney, after the issue of such letters to him, and on the 23d day of June, 1867, had died; and that, pursuant to the power and direction contained in the will, the petitioner had, by deed, under his hand and seal, nominated and appointed Egerton L. Winthrop, as an

executor of said will, in conjunction with the petitioner, and a trustee under said will, for the purposes therein mentioned, in the place of the said Philip R. Kearney. And that the appointment was filed in the Surrogate's office.

The petition prayed for the issuance of letters testamentary to the said Egerton L. Winthrop, in conjunction with the petitioner.

THE SURROGATE. Under the Ecclesiastical Law and practice of England, there can be no question that, there, the survivor of two or more executors may be empowered by the will to appoint a fresh executor, to be joined with himself, or to survive him, in the execution of the testamentary bequests.

But our statute does not recognize the powers of the executor as exclusively flowing from and derived under the will in which he is named. In the State of New York, the executor, even though fully named as such in the will, has no authority except he have received testamentary letters from the Surrogate; and it is this statute which has modified the Ecclesiastical Law, and changed the rule with respect to the authority of those delegated to execute wills.

"Every person named in a will as executor, and not named as such in the letters testamentary, or in letters of administration with the will annexed, shall be deemed to be superseded thereby, and shall have no power or authority whatever, as such executor, until he shall appear and qualify." (3 *R. S.*, 5*th ed.*, *p.* 156, § 15.)

Our statute then, intends that the executor shall not derive his authority from the naked probate of the will, as under the ecclesiastical usage. He is nominated in the will, but is appointed by the Court; and he derives his authority not from the testator alone, but from the people of the State of New York, who, through their official servants, confirm the nomination of the testator. The

statute of our State provides for the grant of letters testamentary; and in doing so, it intended to put an end to such questions as acceptance of the trust of partial executorship, and similar doubtful points, with which the English books are filled.

The questions raised and decided concerning the com petency and powers of executors have been very interesting in the English Ecclesiastical Courts. *Dayton on Surrogates*, *chap.* 3, has copied many things said by *Williams on Executors*, *vol.* 1, *p.* 185, concerning the powers of executors, as obtained by the mere nomination of the testator and the decree of probate. The decisions of the ecclesiastical tribunals, untrammelled by statutory enactments, are in many respects inapplicable, where we are acting under the strict letter of our law.

The rule was, that the testator appointed the executor, by his own free will and act. (2 *Black. Com.*, 503.) Any person might be named by him, who was not expressly forbidden to act as such; and so the king (Henry VI) was appointed executor of his mother the queen dowager. He assumed the right to delegate three noblemen to act for him; and his right so to do was of course admitted by the Probate Court, and has formed a precedent, of which advantage is sought to be taken, it would appear, at this late day. The Probate Courts in England have admitted corporations sole to be executors (*Godolph.*, *part* 2, *chap.* 6; *Went. Off. Ex.*, *p.* 39); and, in spite of the stringent Common Law, they allowed alien enemies to be (*Godolphin*, *ut supra*), and even a child unborn, if a co-executor with adults; and where a child in *ventre sa mere* was named, and twins were born, they recognized them all as executors; (*Idem.*) The old Canon Law, which stoutly maintained women's rights, insisted on recognizing married women as executrices, although, by the law of England, the wife had no recognized separate existence from her husband. It went further, in declaring that a husband should not force his

wife to appear in the spiritual court, and take probate against her will. (*Godolph.*, *part* 2, *chap.* 10.) The Canon Law only excluded from the executorship of a will, traitors, felons, heretics, apostates, usurers, libellers of noble or religious persons, incestuous bastards (1 *Williams on Ex'rs*, *p.* 192), excommunicated persons, Papists, Unitarians, infidels, idiots and lunatics.

The appointment of executor of a will, it was uniformly held, could be delegated. As for instance, where the testator declared that his legatees should appoint two persons to execute his testamentary bequests; the legatees executed the appointment and filed it with the Prerogative Court, which thereupon granted probate to the persons so nominated, as executors. The deputy registrar, being called upon for his opinion, on that occasion, informed the Court, that, in practice, instances had often occurred of granting probates to persons nominated by those authorized by the testator to nominate. (*Goods of Cringan*, 1 *Hagg.*, *p.* 548.)

That this is the ordinary usage in England, where the will and not the letters testamentary, designate the executor, we are advised by other cases. Where a testator appointed an executor and provided that, in the event of his death, another should be substituted, and the first died, the substituted executor was admitted to execute the office (*Goods of Leighton*, 1 *Hagg.*, 235); and that would probably be done here under our statute, if the substituted executor were actually named in the will. In the case of the *Goods of Deitchman*, 3 *Curt.*, 123, the testatrix appointed A and B executors, and "in case of the death of either, empowered the survivor to appoint another," as in the case at bar. A died, and B, who survived, appointed C to act with him, and it was held that probate might pass to C, and that he, on the death of B, might appoint still another, the will requiring that "there should continue to be two executors."

In the late case of *Jackson* v. *Paulet*, 2 *Rob. Ecc. R.*,

344,these rulings were reaffirmed,and this case was since the statute of 1 *Victoria, chap.* 26, known as the Wills Act, which does not, indeed, change the law as to letters testamentary.

We must never forget, in referring to cases in the spiritual courts of England, that they were investigated and decided under circumstances of almost entire freedom from statute law. The Courts of Conscience were untrammelled. They were not, like the Surrogates' Courts in the State of New York, creatures of the written law, Courts of peculiar and limited jurisdiction. The prerogative judge had but to consider the interests of his petitioners and of the estates over which he was set to see right and justice done. The Surrogate here finds hard and inflexible rules from which he has no authority to depart, and which he is unable to liberalize by construction. What, for instance, can be more distinct and limited, as a conferring of powers on the Surrogate, than the following section? What more positive language could be used to intimate to him that his duties in this regard were strictly ministerial and functional?

"When any will of personal estate shall have been duly admitted to probate, the Surrogate who took such proof shall issue letters testamentary thereon, to the persons named therein as executors." (*R. S. Vol.* 3, *5th ed., p.* 154, § 1.)

There are two executors named in this will, Philip R. Kearney and John J. Townsend. On the probate I issued letters testamentary to both. One has since died. His survivor is declared by the Revised Statutes to possess all the powers of an executor.

See the statute again:

"In case any one of several executors or administrators, to whom letters testamentary or of administration shall have been granted, shall die * * * then the remaining executors and administrators shall proceed and complete the execution of the will or of the administration, according to law." (*Vol.* 3, *5th ed., p.* 162, § 44.)

It is clearly the intent of our statute that the right of executorship cannot be thus delegated. It forbids it by declaring who shall act if an executor die, or if all die. The will is not allowed to override the law. It cannot direct the Surrogate to issue letters testamentary (since that is the form known to us of appointing executors), in a case where the law does not authorize him to give them.

Doubtless a Court of Equity could and would carry out the appointment of Mr. Winthrop, as trustee, under the deed of appointment made by the surviving executor, but as to the executorship, *that* is defined and limited by the statute, survives to Mr. Townsend as surviving executor, and cannot be delegated further. The petition must be denied.